UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-cv-361-KSF

STEPHANIE DENISE OLSON,                                        PETITIONER,

V.                                    **OPINION & ORDER**

JEFF LITTLE,
Warden, Otter Creek Correctional Complex,                      RESPONDENT.

* * * * * * * * * *

On November 12, 2009, Stephanie Olson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 concerning her conviction in Kentucky state court for complicity to murder.  DE 1.  Warden Jeff Little responded on March 9, 2010.  DE 10.  Consistent with local practice, this matter was referred to the Hon. Edward B. Atkins, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b).

On January 5, 2012, the Magistrate Judge filed his Report and Recommendation that the petition be denied  based on a review of the state court record and the applicable law.  DE 20.  Following an extension of time, Olson filed objections to the Report and Recommendation on February 9, 2012.  DE 23.  On February 23, 2012, Warden Little filed his response to Olson's objections.  DE 25.  This matter is now ripe for review.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this matter were fully set out by the Supreme Court of Kentucky in *Olson v. Commonwealth*, No. 2005-SC-592, 2008 WL 746651 (Ky. March 20, 2008) and were briefly summarized in the Magistrate Judge's Report and Recommendation.  Accordingly, the facts are recited herein only as necessary to place the Court's disposition of this matter in context.

The victim of the June 6, 2002 murder was Diane Snellen, Olson's mother, who disapproved of Olson's relationship with her boyfriend, David Dressman.  Dressman and his acquaintance, Timothy Crabtree, were accused of the murder.

Olson was convicted by a Scott Circuit Court jury of complicity to murder.  Record ("R")  2 at 2-4.  As a result, she was sentenced to a term of imprisonment of twenty-five years.   Olson's conviction and sentence were affirmed by the Kentucky Supreme Court.  R. 6 at 112-137.  Her petition for rehearing [R. 7 at 138-150] was denied but led to a modification of the Kentucky Supreme Court's Opinion.  The modification did not affect the holding of the case.  R. 9 at 158-184.

Olson then filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. DE 1. In support, Olson argued that she was entitled to relief on the following grounds: (1) the evidence at the state trial was constitutionally insufficient to sustain her conviction for complicity to murder; (2) she was denied a fundamentally fair trial and due process of law because of the improper tactics employed by the prosecution to obtain the "impeachment" testimony of Richard Roberts; (3) she was deprived of a fundamentally fair trial by the trial court's numerous evidentiary errors; (4) she was deprived of a fair trial and due process because the court denied her request for a mistrial based on the prosecutor's references in his opening statement to highly damaging testimony, which testimony was not presented.

## II.     THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA"), Magistrate Judge Atkins reviewed the state court's adjudication of the merits of Olson's claims to determine if it:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a  decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).  However, "federal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  As noted by the Magistrate Judge, it is not the role of the reviewing court "to reexamine

state-court determinations on state-law questions." *Id*. at 68 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle*, 502 U.S. at 68.  Additionally, a federal court may not grant a writ of habeas corpus "simply because the state court issued a decision that erroneously or incorrectly applies clearly established law; rather, the state court's application of law must have been objectively unreasonable." *Ware v. Renico*, 371 F.3d 862, 865 (6th Cir. 2004).

Olson's brief to object to the Magistrate Judge's Report and Recommendation begins with a verbatim repetition of the extensive factual background in the petition.  *Compare* DE 23 at 2-18 to DE 1 at 4-20.  This is followed by a lengthy and repeated discourse on habeas corpus law.  *See* DE 23 at 19-41; DE 1 at 23-45.  Another eight pages of factual background follow.  DE 23 at 41-48.  None of this discussion is tied to the Magistrate Judge's Report.  In fact, the Report is first mentioned on page 48 of the so-called "Objections."  One has to wonder why counsel thought this lengthy discourse was the best use of the Court's valuable time.

### A.    Application of the AEDPA

Olson's first objection is that the AEDPA should not have been applied to her case because the Supreme Court of Kentucky relied only on Kentucky case law in upholding the sufficiency of the evidence to support her conviction.  Accordingly, she asserts that her 14th Amendment claim was not adjudicated on the merits and should be reviewed *de novo*.

The Kentucky Supreme Court applied the test for sufficiency of the evidence set forth in *Commonwealth v. Benham*, 816 S.W. 2d. 186 (Ky. 1991).  *Benham* asks whether the evidence is sufficient for "a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty...."  *Id.* at 1887.  The federal test set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) is whether, based on the evidence, "any rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt."   *Id.* at 319.  The Magistrate Judge correctly concluded

that nothing in the state court opinion suggested any variance from the *Jackson* standard in ruling

on Olson's claim.  Additionally, as the Magistrate Judge noted, a number of courts in this Circuit

have found an application of the *Benham* standard to be substantially equivalent to that of *Jackson*,

such that the Kentucky Supreme Court adjudicated both the state and federal sufficiency of the

evidence claims.   DE 20 at 6.  *Bowen v. Haney*, 622 F. Supp. 2d 516, 547 (W.D. Ky. 2008) (This

Court finds no indication that the Kentucky Supreme court departed from the *Jackson* test for

insufficiency of the evidence in applying *Benham*); *Longwell v. Arnold*, 559 F. Supp. 2d 759, 767

(E.D. Ky. 2008) (The Supreme Court of Kentucky applied a similar standard as the Supreme Court

used in *Jackson*....); *Hodge v. Haeberlin*, No. 04-cv-185-KKC, 2006 WL 1895526 at *39 (E.D. Ky.

June 10, 2006) ("The words of the Supreme Court of Kentucky [citing *Benham*] clearly mirror the

constitutional standards set by the Supreme Court of the United States."); *see also Matthews v.

Parker*, 651 F.3d 489, 503 n. 3 (6th Cir. 2011) (noting that the analysis for a failure to direct a

verdict and an insufficiency of the evidence claim are "materially identical" and that both *Benham*

and *Jackson* "scrutinize whether any rational trier of fact would find the element in question beyond

a reasonable doubt."), *rev'd on other grounds*, *Parker v. Matthews,* ___ U.S. ___, 2012 WL

2076341 (June 11, 2012).

###    B.    Sufficiency of the Evidence

Next, Olson argues that the "Magistrate Judge did not correctly apply *Jackson* to the facts

of this case." DE 23 at 54.  The Supreme Court recently reiterated that sufficiency of the evidence

claims "face a high bar in federal habeas proceedings because they are subject to two layers of

judicial deference.  First, on direct appeal, 'it is the responsibility of the jury – not the court – to

decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may

set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could

have agreed with the jury.'" *Coleman v. Johnson*, ___ U. S. ___, 132 S.Ct. 2060, 2062 (2012),

4

(quoting *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S.Ct. 2, 4 (2011)).  "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was "objectively unreasonable."'" *Id.* (quoting *Renico v. Lett*, 559 U.S. ___, ___, 130 S.Ct. 1855, 1862 (2010)).  *See also Nali v. Phillips*, 681 F.3d 837, 841 (6th Cir. 2012) (The *Jackson* "standard requires deference to the jury's verdict and to the state court's review of that verdict.").  The Magistrate Judge correctly applied the *Jackson* standard and AEDPA deference when considering Olson's challenges to the evidence.

Olson does not object to the Magistrate Judge's conclusion regarding evidence that David Dressman and/or Timothy Crabtree killed Diane Snellen, Olson's mother, by stabbing and that they caused the death intentionally.  She objects to the evidence of her complicity with respect to proof of a voluntary act of assistance and proof of intent.  DE 23 at 55-60.  The Magistrate Judge carefully reviewed the evidence and found that "the Kentucky Supreme Court's determination was not clearly contrary to, or an unreasonable application of, the constitutional standard articulated in *Jackson.*"  DE 20 at 14.  This Court agrees there was sufficient circumstantial evidence to support the jury verdict and the Magistrate Judge correctly recommended that the habeas petition be denied.

Olson argues that her comment to Walter Martin could have been an example of proper mourning, rather than an admission of guilt, and "does not lend itself to an interpretation that it was actually a confession." DE 23 at 55.  Olson also challenges Barbosa's testimony that Olson described "a knife and the head was moving and the knife was pushed again and the head stopped moving."  She claims this statement was "just as consistent with innocence as with guilt."  *Id.* at 56.  Olson further argues that evidence relied upon by the Magistrate Judge is "too speculative."  *See e.g.* DE 23 at 57.  However, a "reviewing court 'does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury.'"  *Nali*, 681 F.3d at 842

(quoting *Johnson v. Mitchell*, 585 F.3d 923, 931 (6th Cir. 2009)).  A reviewing court cannot second guess the jury's interpretation of Olson's statements nor the weight given to them by the jury. *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).

The Magistrate Judge considered the following evidence of complicity.

- Zach Greer, Dressman's roommate, testified Olson made comments about wishing her mother was dead and wishing someone would murder her mother.  Transcript ("Tr.") Vol. VI at 885.

- Gale Salyer testified she was living with Greer at the time of the murder. *Id.* at 832. Olson told Gale that she hated her mother and wanted her to die.  *Id.* at 835-37. Olson increasingly made such comments about her mother and stated just prior to the murder that she wanted to kill her mother.  *Id.* at 839.  Gale testified that the morning of June 6, 2002, she was awakened by Olson who told her that Snellen had committed suicide.  *Id.* at 850.  Olson, Dressman and Gale then drove to Snellen's house.  Gale went upstairs alone and found Snellen's body.  *Id.* at 852-54. Olson, from the bottom of the stairs, said: "is she not fucking dead, Gale?  Is she not fucking dead?  She's stabbed the fuck up.  Is she not dead?"  *Id.* at 854.

- Martin testified that following Snellen's death, he asked Olson about her parents. Olson began to cry and said "she was part of her mother's death."  Tr. Vol. XI at 1588-89.

- Barbosa testified she met Olson while they were in jail together from July through September 2004. Tr. Vol. XV at 2111.  Olson told Barbosa that Snellen did not like Dressman.  Olson said she did not like her mother.  *Id.* at 2116.  She told Barbosa that if she was acquitted, she would receive $200,000 from her mother's life insurance policy.  *Id.* at 2118.  Olson also told Barbosa that Dressman was the

person who stabbed Snellen and that Crabtree was present during the murder.  *Id.* at 2124-25, 2127.  Olson described the murder to Barbosa, stating that Snellen's head continued to move so "they hit the knife again and she didn't move no more."  *Id.* at 2126.

• Shawn Satterly, who lived near Snellen, testified he saw a small red hatchback parked near Snellen's house around 11:30 p.m. the night of the murder.  Tr. Vol. VII at 940-41.  The car was similar to one that frequently parked in Snellen's driveway.  *Id.* at 948-49.  He also saw a young male crouched near Snellen's house around 11:30 p.m.  *Id.* at 942-44.  In his police statement, however, Shawn said the vehicle he saw was not Olson's   *Id.* at 963-64.

• Shawn's sister, Megan, also testified to seeing a young male crouched near Snellen's house on the night of the murder.  *Id.* at 969-70.  She also saw the red car parked on the street near Snellen's house, but she did not know for sure whether the car was Olson's.  *Id.* at 970-71.

• Joe Jewell, Snellen's neighbor, testified that he saw Olson's car driving in the area of Snellen's home when he was on his way to work around 10:30 p.m.  Tr. Vol. VI at 791-97.  Jewell observed the car was sitting low and believed there was extra weight in it.  *Id.* at 801-803.  He had worked on Olson's car at least two times in the past.  *Id.* at 789-90.  He thought Olson drove a red Toyota.   It was actually a Honda, but he thought Toyotas and Hondas looked the same.  *Id.* at 790.  He would have recognized Olson's car.  *Id.*

• Kevin Butler said Tim Crabtree told him he was driven to a Frisch's by "Stephanie" so Crabtree could meet with Dressman who worked there.  Tr. Vol. IV at 567-72.

Richard Roberts later testified that it was during this meeting that Dressman gave Crabtree the murder weapon, a knife stolen from Frisch's   Tr. Vol. XIV at 2096.

- Alfred Hensley, kitchen leader at the Frisch's restaurant, testified that a knife disappeared from the restaurant around the first week of June 2002 and was never found.  Tr. Vol. V at 602-608.  Hensley described the missing knife as seven or eight inches long, with a serrated blade and sharp tip.  *Id.* at 609-10.

- Dr. John Hunsaker, who performed an autopsy on Snellen's body, testified that she had suffered multiple stab wounds.  Tr. Vol. XIII at 1882-87.  The wounds were made by a blade of fairly significant length, possibly seven or eight inches long.  *Id.* at 1908-09.  He testified that a knife obtained from Frisch's, identical to the missing one, could have made the wounds, but was not necessarily the murder weapon. *Id.* at 1909-11, 1917, 1931.

- Additionally, several witnesses testified that Olson did not exhibit a proper degree of mourning following her mother's murder.  Tr. Vol. VI at 856; IX at 1290-92, 1255-56; XI at 1535-36.

As the Magistrate Judge noted, "circumstantial evidence alone is sufficient to sustain a conviction.... "  *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999).  It is not necessary to exclude every reasonable hypothesis except that of guilt, so long as there is enough evidence for any rational trier of fact to have found proof beyond a reasonable doubt. *Id*., DE 20 at 10.  While Olson contends the evidence was highly speculative, the Magistrate Judge correctly concluded that a rational trier of fact could have found beyond a reasonable doubt that Olson was complicit in the murder of Diane Snellen.  This Court agrees with the Magistrate Judge's conclusion that the Kentucky Supreme Court's adjudication was not clearly contrary to, nor an unreasonable application of, the constitutional standard articulated in *Jackson.*

8

**C.     Olson's Prosecutorial Misconduct Claim Was Procedurally Defaulted**

Olson admits that habeas petitioners must adequately present their claims to the state courts before seeking relief from federal court.  DE 23 at 61.  Under the exhaustion requirement, a petitioner must have fairly presented the "substance" of her federal habeas claim to the state courts, so that the state judiciary may have the first opportunity to hear the claim. *Lyons v. Stovall*, 188 F.3d 327, 331 (6th Cir. 1999).  Specifically, Olson must have presented to the state court both the factual and legal basis for her federal constitutional claims. *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004).  Further, if the claim was not fairly presented, and the time to present the claim to the state court has run, then the claim is deemed to have been procedurally defaulted. *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004).

There are four ways in which a petitioner can fairly present a claim to a state court, as outlined by the Sixth Circuit: (1) phrasing the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) reliance upon federal cases employing the constitutional analysis in question; (3) reliance upon state cases employing the federal constitutional analysis in question; or (4) alleging facts well within the mainstream of the pertinent constitutional law. *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).

Olson objected to the Magistrate Judge's determination that she procedurally defaulted her claim of prosecutorial misconduct, arguing that the court applied the "fair presentation" standard too narrowly.  Factually, Tim Crabtree and Richard Roberts were both in state custody on unrelated charges in the fall of 2002.  Tr. Vol. XIV at 2072.  Roberts told police that Crabtree admitted his involvement with Dressman in Snellen's murder. *Id.* at 2091-99.  Crabtree testified at Olson's trial that Dressman admitted to killing "that woman."  Tr. Vol. XIV at 2068.  In Crabtree's testimony, however, he expressly denied having any involvement in Snellen's murder. *Id.* at 2072-76.  That denial opened the door for the prosecution to impeach Crabtree through the testimony of Richard

Roberts. In her habeas petition, Olson argued that the prosecution employed improper tactics to obtain Timothy Crabtree's "proffer of testimony" and the impeachment testimony of Richard Roberts and, thereby, denied her right to a fair trial.

Olson's claim regarding the testimony of Crabtree and Roberts was presented to the Kentucky Supreme Court as only an evidentiary issue, not as prosecutorial misconduct. She urged the state court to adopt the "primary purpose test" used by federal courts for evaluating whether a party may properly impeach its own witness under Federal Rule of Evidence 607. R. 3 at 42-43. The state court rejected this argument because the Kentucky Rules of Evidence allow prior inconsistent statements to be admitted not only for impeachment, but also as substantive evidence. KRS 801A()(1). Olson never raised a federal constitutional claim of prosecutorial misconduct in state court.

Olson's appeal brief did not cite any federal or state cases "employing the constitutional analysis in question." *Whiting*, 395 F.3d at 613. The only federal case cited in her brief is *United States v. Gomez-Gallardo*, 915 F.2d 553 (9th Cir. 1990), which references an analysis of Federal Rule of Evidence 607 – this case does not mention prosecutorial misconduct nor the elements required to prove such a claim. Additionally, Olson has not met any of the other fair presentation tests set forth in *Whiting*. Olson's argument heading in state court that she was "denied her right to a fair trial" did not give her a license to raise a totally different legal theory in her habeas petition. "A petitioner fairly presents a federal habeas claim to the state courts only if he 'asserted both the factual and legal basis for his claim.'" *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F3d 674, 681(6th Cir. 2000)). The Magistrate Judge correctly held that, while the brief outlined factual allegations that might underlie a prosecutorial misconduct claim, this is not enough to "fairly present" that constitutional claim to the state court. DE 20 at 22. *See Wagner v. Smith*, 581 F.3d 410, 415-18 (6th Cir. 2009).

10

Even if Olson had not procedurally defaulted her claim of prosecutorial misconduct, she would not be entitled to relief. For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the Petitioner must show that the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* The principal test for alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In order to sustain a claim for prosecutorial misconduct, Olson would need to show "that (1) the evidence the prosecution presented was false; (2) the prosecution knew it was false; and (3) the false evidence was material." *Workman v. Bell*, 178 F. 3d 759, 766 (6th Cir. 1998). The proffered evidence also must be more than merely misleading, but unquestionably false, for which Olson bears the burden. *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000). Further, due process is denied only if the prosecution's knowing introduction of false testimony was reasonably likely to have affected the judgment of the jury. *States v. Lochmondy*, 890 F.2d 817, 823 (6th Cir. 1989).

Olson claims that the prosecution bargained for Crabtree's testimony, knowing it to be untruthful, in order to impeach that testimony. However, nothing in the objections to the Magistrate Judge's Report and Recommendation nor anything in the record indicate that "the evidence in question was 'indisputably false,' rather than merely misleading." *Byrd v Collins*, 209 F.3d 486, 517 (6th Cir. 2000). There is simply inadequate evidence to show that the prosecution knew the evidence was indisputably false, notwithstanding the fact that they impeached their own witness. Further, one can believe testimony to be false without knowing it to be indisputably false. Olson's objections to the Magistrate Judge's Report and Recommendation do not change the legal analysis nor the facts; therefore, Petitioner's prosecutorial misconduct claim is both procedurally defaulted and without merit.

11

**D.     Evidentiary Errors**

Olson's third claim is she was denied a fundamentally fair trial by: 1) the admission of testimony relaying out-of-court statements made by David Dressman; 2) the admission of Tim Crabtree's proffer; 3) the admission of statements made by Diane Snellen to Nancy Lusby; 4) the admission of Kevin Butler's testimony that Crabtree said "Stephanie" drove him to Frisch's to meet with Dressman; 5) the admission of all testimony regarding Olson's lack of mourning; 6) the admission of a video depicting Olson's encounter with police; and 7) the exclusion of evidence of Richard Roberts' misdemeanor conviction for false reporting.  On direct appeal to the Kentucky Supreme Court, Olson raised each of these as individual claims asserting that the trial court had erred by admitting evidence against her and excluding evidence she sought to introduce.  She now claims that these errors, individually and cumulatively, deprived her of a fundamentally fair trial.

Generally, federal habeas corpus review of evidentiary rulings based on state law is "extremely limited."  *Jordan v. Hurley*, 397 F.3d 360, 362 (6th Cir. 2005).  It does not rise to the level of constitutional magnitude unless it was so egregious that the petitioner was denied a fundamentally fair trial. *See Burgh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  To determine whether the admission or exclusion of evidence denied  fundamental due process rights, a court should consider the extent to which the evidence is "critical" to the case, whether it "tend[s] to exculpate" the accused, and whether the evidence bears "persuasive assurances of trust-worthiness." *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994).

1.     Admission of Dressman's Hearsay Statements Was Not a Due Process violation

There were two arguments in the Kentucky Supreme Court regarding hearsay testimony.  First, Crabtree testified that, prior to the murder, Dressman asked him how to kill a person in a quiet place; and, sometime after the murder, Dressman admitted to killing Snellen.  Second, Steve McCormick testified that, just days after the murder, Dressman said "they" took care of "that

problem," when asked whether he knew who killed Snellen.  Olson argued before the Kentucky Supreme Court that the statements made by Dressman to Crabtree and McCormick were inadmissible hearsay under the state rules of evidence and that admitting them violated her rights under the Confrontation Clause. [R. 3 at 33-37].  The Kentucky Supreme Court addressed the merits of her Confrontation Clause claim, holding that Dressman's out-of-court statements were non-testimonial and, thus, did not implicate Petitioner's confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2004). *Olson*, 2008 WL 746651 at *3-4.

Further, the Kentucky Supreme Court found that, while the admission of the hearsay evidence outside of an exception violated the Kentucky Rules of Evidence, the error was harmless because there was no reasonable probability that the otherwise inadmissible testimony affected the verdict. *Olson*, 2008 WL 746651 at *4.  Olson asserts that the statements implicated her in the murder and were so prejudicial that they deprived her of a fundamentally fair trial.

Olson first objects to the Magistrate Judge's determination that this claim was procedurally defaulted.  The Magistrate Judge stated that Olson's brief before the Kentucky Supreme Court did not assert both a factual and legal basis for this type of claim. DE 20 at 29.  She made no legal arguments that would support this type of claim except for mentioning "due process" once.  Her arguments were not developed beyond a mere evidentiary error.   In her objections to the Magistrate Judge's Report and Recommendation, Olson asserts that her petition for rehearing did cite the proper constitutional standard for a claim of denial of due process and a fair trial.  However, new issues cannot be raised in a petition for rehearing.  *See Easley v. Reuss*, 532 F.3d 592, 594-95 (7th Cir. 2008) (Panel rehearing is not a vehicle for presenting new arguments); *Costo v. United States*, 922 F.2d 302, 302-03 (6th Cir. 1990) ("[A]n argument not raised in an appellate brief ... may not be raised for the first time in a petition for rehearing.").  Kentucky Rule of Civil Procedure 76.32 is quite clear.

> Except in extraordinary cases when justice demands it, a petition for rehearing shall be limited to consideration of the issues argued on the appeal and will be granted only when it appears that the court has overlooked a material fact in the record, or a controlling statute or decision, or has misconceived the issues presented on the appeal or the law applicable thereto.

CR. 76.32(1)(b).  A whole new legal theory of denial of a fundamentally fair trial does not fit within that framework.  The Magistrate Judge correctly determined that Olson's claim was not exhausted.

Moreover, even if the claim had been exhausted, the Magistrate Judge properly concluded Olson would not be entitled to relief.  DE 20 at 29.   In order to convict Olson of complicity to commit murder, the prosecution had the burden of proving beyond a reasonable doubt that Dressman and/or Crabtree had intentionally killed Snellen.  The erroneously admitted statements above directly implicate Dressman in the murder of Snellen and were, therefore, prejudicial to Olson.  Nonetheless, Olson failed to demonstrate that the statements were a "crucial, critical, highly significant factor" in her conviction, such that the error could be deemed not harmless. *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000).  As noted by the Magistrate Judge, even if Crabtree's testimony regarding Dressman's admission of guilt had been excluded, Crabtree still could have been questioned regarding his own involvement in the murder.  Crabtree's denial of involvement would have opened the door to impeachment with Roberts' testimony and established Crabtree's involvement in the murder.   Moreover, the Kentucky Supreme Court noted that there was admissible evidence that Dressman asked Crabtree how to kill someone in a quiet place, and Crabtree suggested stabbing them in the lungs.  *Olson*, 2008 WL 746651 at *4.  There was evidence that a knife disappeared from the restaurant where Dressman worked shortly before the murder.  *Id.*  Crabtree told Kevin Butler that he was driven to a Frisch's by "Stephanie" so that Crabtree could meet with Dressman.  Tr. Vol. IV at 567-72.  Roberts testified that Dressman gave Crabtree the murder weapon during this meeting.  Tr. Vol. XIV at 2096.  Barbosa testified that

Olson told her she was in the home during the murder, that Dressman stabbed Snellen, that Crabtree was present, and that Olson described the murder.  Tr. Vol. XV at 2121, 2124-27.

In her Objections, Olson relies on two cases.  In the first, *Thomas v. Hubbard,* 273 F.3d 1164 (9th Cir. 2002), the court found a number of evidentiary errors, the cumulative effect of which were deemed not to be harmless error.   Unlike in *Hubbard*, here there was other evidence connecting Dressman and/or Crabtree to the murder.  The second case, *Ege v. Yukins*, 485 F.3d 364 (6th Cir. 2007), found the admission of the only piece of physical evidence connecting the defendant to the crime was not harmless.  The evidence admitted here does not rise to this level.  Accordingly, the erroneous admission of Dressman's out-of-court statements did not rise to the level of a due process violation.

### 2.   Failure to admit a witness' prior conviction did not violate Petitioner's right to confrontation

Olson next claims that by improperly excluding evidence of a witness' prior misdemeanor conviction, the trial court violated her Confrontation Clause rights.  At trial, the defense sought to question Richard Roberts, a government witness, about a prior misdemeanor conviction for falsely reporting an incident to the police.  Pursuant to the Kentucky Rules of Evidence, the trial court ruled that the defense could not question Mr. Roberts about his false reporting conviction.  On direct appeal, Olson argued that the trial court's ruling deprived her "of her right to confront Roberts and due process contrary to the Sixth and Fourteenth Amendments, United States Constitution and Sections 2 and 11, Kentucky Constitution, which includes the right to attack the credibility of a witness by demonstrating that the witness may have an interest, bias or prejudice that would cause him to testify in a certain way." R. 3 at 41-46.  The Kentucky Supreme Court affirmed the trial court's ruling, holding that Roberts' misdemeanor conviction was inadmissible under KRE 609(a), which permits impeachment if the crime was a *felony*, and under KRE 608(b), which concerns specific instances of conduct other than criminal convictions.  *Olson,* 2008 WL 746651 at *9.

The Magistrate Judge found this claim had not been procedurally defaulted, and Olson objected to the analysis on the merits of her Confrontation Clause claim.  Trial judges retain wide latitude "to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, at 679 (1986). States also have broad authority to promulgate rules that exclude evidence so long as they are not arbitrary or disproportionate to the purposes they are designed to serve. *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  In this case, the state court found that evidence of Roberts' prior misdemeanor conviction could not be admitted under the Kentucky Rules of Evidence ("KRE"). Olson asserts this evidence was admissible under KRE, but a state's misapplication of its own rules of evidence may not be considered in a federal court's habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Therefore, the only remaining question is whether the exclusion of Roberts' prior conviction violated the federal Constitution. *Id*. at 68.

Where a defendant's ability to cross examine a witness has been limited as was done in this case, the reviewing court must determine "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006). Further, "the bounds of the trial court's discretion are exceeded when the defense is not allowed to place before the jury facts from which bias, prejudice or lack of credibility of a prosecution witness might be inferred." *Id*.  Olson asserts that the evidence of Roberts' prior misdemeanor conviction would have demonstrated: (1) Roberts' motive to testify falsely and (2) Roberts' general lack of credibility.

First, the Magistrate Judge noted this particular piece of impeachment evidence would not have created an inference that Roberts had a motive to testify in favor of the prosecution.  Rather than exposing a motive to lie, Roberts' prior misdemeanor conviction could have been used by the prosecution to show that he was being truthful.  Indeed, having already been convicted of false

16

reporting, he would be less likely to give another false statement to the police within such a short time frame.  DE 20 at 334.  Second, Olson was allowed to ask if Roberts had been convicted of a felony, what his sentence was, if he had filed a motion to seek shock probation, if he had a deal with the Commonwealth, and whether he hoped to receive favorable treatment in exchange for his testimony.  Thus, Olson had an opportunity to question Roberts on whether he sought to receive or had been offered anything in exchange for his testimony.

State rules may exclude evidence without violating the Confrontation Clause so long as those rules are not "arbitrary" or "disproportionate to the purposes they are designed to serve." *Boggs v. Collins,* 226 F.3d 728, 743 (6th Cir. 2000).  In *Childers v. Commonwealth*, 332 S.W.3d 64, 72 (Ky. 2010), *modified on denial of reh'g* (March 24, 2011), the Kentucky Supreme Court confirmed that KRE 608 and 609 prohibit admission of a witness' prior misdemeanor convictions and specific instances of conduct that resulted in a conviction.  The court explained that these rules manage the prejudice associated with a prior conviction by providing careful controls for when and how a conviction may be admitted.   *Id.*  This Court agrees that Kentucky's evidence rules are neither arbitrary nor disproportionate to the purposes they are designed to serve.  Moreover, the defense could have asked whether the witness had a motive to testify in favor of the prosecution or was biased toward the prosecution.  This Court agrees with the Magistrate Judge's conclusion that Olson has failed to show that Kentucky's Rules of Evidence denied her right to confront Roberts.

### 3.   Remaining Evidentiary Claims

The remainder of the petitioner's evidentiary claims are procedurally defaulted.  In her objections to the Magistrate Judge's Report and Recommendation, Olson simply asserts that by "phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right or alleging facts well within the mainstream of constitutional law,"

she preserved claims for federal habeas review. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). While this statement of the law is correct, Olson did not meet the requirements; therefore, her claims are procedurally defaulted.

Olson cited no federal or state cases employing constitutional standards. She simply claimed that the evidentiary errors deprived her of a fair trial contrary to the Sixth and Fourteenth Amendments. These arguments were not developed beyond claims of evidentiary error. Further, she only made bald statements that these errors violated her constitutional rights. A simple reference to the Sixth and Fourteenth Amendments along with general allegations of the denial of the right to a fair trial does not fairly present a claim to the state court. *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004) (claim not fairly presented where petitioner's only citation to federal authority appeared in a section heading and petitioner "failed to develop any cogent arguments regarding those rights beyond naked assertions that they were violated.").

Even if these claims of evidentiary error are not procedurally defaulted, Olson is not entitled to relief on the merits. As previously noted, federal habeas corpus review of evidentiary rulings based on state law is "extremely limited," as the court noted in *Jordan v. Hurley*, 397 F.3d 360, 362 (6th Cir. 2005). An error does not rise to the level of constitutional magnitude unless it was so egregious that the petitioner was denied a fundamentally fair trial. *See Burgh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). To determine whether the admission or exclusion of evidence denied a petitioner fundamental due process rights, a court should consider the extent to which the evidence is "critical" to the case, whether it "tend[s] to exculpate" the accused, and whether the evidence bears "persuasive assurances of trustworthiness." *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994).

i.     Lusby Testimony

Ms. Lusby was a friend of Diane Snellen and testified to the nature of Olson's relationship with her mother, based on conversations Lusby had with Ms. Snellen.  The Kentucky Supreme Court held it was error to admit this evidence, but found the error to be harmless in light of the "overwhelming evidence of a troubled mother-daughter relationship." [R. 6 at 131-133].  In her objections, Olson reiterates her arguments regarding an overly narrow interpretation of exhaustion, which this Court has previously addressed.  She further argues that the allowance of "such rampant, unreliable hearsay to permeate the trial certainly rose to the level of fundamental unfairness."  DE 23 at 82.

Olson specifically claims that she had no means of confronting Snellen regarding those statements or teasing out details to provide more context for the jury.  However, she fails to show how this was "critical" to her case or how it would exculpate her, particularly in light of the extensive evidence of the bad relationship between Olson and her mother.  In light of these considerations, the Court agrees that Olson is not entitled to relief for this claim.

ii.     Butler Testimony

Kevin Butler, a coworker of David Dressman, testified that Crabtree told him, in response to a question of how he got to Frisch's (where Dressman and Butler were coworkers), that "Stephanie" had brought him.  Olson wants this Court to engage in an analysis of the proper interpretation of the Kentucky Rules of Evidence.  Whether or not a state misapplies its own rules of evidence is not part of a federal court's habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Additionally, the admission of this testimony, as noted by the Kentucky Supreme Court, was proper as a statement made by a coconspirator.  This evidentiary ruling does not rise to the level of a constitutional violation because the petitioner failed to show how the ruling was egregious

when it accorded with the Kentucky Rules of Evidence and the Kentucky Supreme Court clearly held that the trial judge did not abuse his discretion. R. 6 at 123.

iii.   <u>Mourning Evidence</u>

The trial court admitted a significant amount of evidence that showed that Olson did not properly mourn, according to those testifying. Olson claims that this evidence was inadmissible because it was irrelevant, or, in the alternative, that it was prejudicial. She asks this Court to again analyze the Kentucky Supreme Court's interpretation of the Kentucky Rules of Evidence. Whether or not a state misapplies its own rules of evidence is not part of a federal court's habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Additionally, this evidentiary ruling does not rise to the level of a constitutional violation because the petitioner failed to show how the ruling was egregious when it accorded with the Kentucky Rules of Evidence and the Kentucky Supreme Court clearly discussed their reasons for affirming the admission of the evidence. R. 6 at 129.

iv.   <u>Admission of DocuCam Video</u>

The trial court admitted a camera videotape of her encounter with Officer Glenn Sly. Olson claims that portions of this video are irrelevant, or, alternatively, substantially more prejudicial than probative. Once again, Olson wants this Court to engage in an analysis of the proper interpretation of the Kentucky Rules of Evidence. That opportunity is declined for the reasons stated above. This evidentiary ruling also does not rise to the level of a constitutional violation. R. 6 at 129.

**E.     Failure to Grant a Mistrial**

Olson's final objection to the Magistrate Judge's Report and Recommendation concerns the denial of her motion for a mistrial after the prosecution failed to call two witnesses referenced in its opening statement. At the outset of trial, the Prosecutor told the jury he would call Tim Creech and Debbie DePew, who would testify that Olson admitted her involvement in the murder. Ultimately, the prosecution failed to call either witness to testify. Olson moved for a mistrial at the

20

close of the Commonwealth's case based on this failure.  The trial court denied the motion, reasoning that she could point this out to the jury in her closing statement. *Olson*, 2008 WL 746651 at *7.

On appeal, the Kentucky Supreme Court concluded that the trial court properly rejected Olson's motion for a mistrial.  She now argues that the failure to grant a mistrial is a deprivation of her right to a fair trial.  This claim is procedurally defaulted because it was not fairly presented to the Kentucky Supreme Court as a violation of the federal Constitution.  She did not cite any federal law in support of her claim, and the state cases cited did not employ the appropriate federal constitutional standard.  Because this claim was not fairly presented to the Kentucky Supreme Court, it is not exhausted and, therefore, procedurally defaulted.

Additionally, even if Olson had fairly presented this claim to the Kentucky Supreme Court, it is clear that she would not be entitled to relief on the merits under the standard set forth in *Frazier v. Cupp*, 394 U.S. 731 (1969).   The circumstances of this case do not warrant relief because (1) there is no indication that the prosecution acted in bad faith and expected that the two witnesses would not testify; and (2) the prosecutor neither emphasized his reference to their expected testimony nor "touted" that their testimony was a crucial part of the case. *Id.* at 736.   In her objections, Olson does not cite any case that finds a similar set of facts to be a violation of the Constitution.  Moreover, the defense was permitted not only to point out this failure to the jury, but also to argue that the prosecution did not meet its burden of proof.  Accordingly, this Court agrees with the Magistrate Judge that this claim should be denied.

## IV.    CONCLUSION AND CERTIFICATE OF APPEALABILITY

In conclusion, having carefully reviewed Olson's objections and finding them to be without merit, and having made a *de novo* determination, this Court is in agreement with the Magistrate Judge's Report and Recommendation.  Therefore, Olson's objections will be overruled.  To the

extent that Olson failed to object to any portion of the Magistrate Judge's Report and Recommendation, she has waived her right to appeal. *See Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986). Nevertheless, this Court, having examined the record and having made a *de novo* determination, is in agreement with the entirety of the Magistrate Judge's Report and Recommendation.

In determining whether a certificate of appealability should issue as to Olson's claims, the Court turns to *Slack v. McDaniel*, 529 U.S. 473 (2000), for guidance. In that case, the United States Supreme Court held:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) [governing the issuance of certificates of appealability] is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Id*. at 484. This Court determines that:

(1) Olson's claim that the evidence at trial was insufficient is not a close call or one which is "debatable"; therefore, a certificate of appealability will not issue.

(2) A certificate of appealability should issue for petitioner's claim of prosecutorial misconduct, dismissed on procedural grounds, because "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

(3) Olson's claim that the numerous evidentiary errors, cumulatively, deprived her of a right to fair trial is not a close call or one which is "debatable" because federal habeas review of state evidentiary rulings is limited and the admission or exclusion of this evidence was not egregious

such that a constitutional violation is even questionable.  Therefore, a certificate of appealability will not issue for this claim.

(4)  A certificate of appealability should not issue for Olson's claim that the trial court deprived her of a fair trial and due process by denying her motion for a mistrial after the prosecution failed to call witnesses referenced in the opening statement, dismissed on procedural grounds, because "jurists of reason would [not] find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would [not] find it debatable whether the district court was correct in its procedural ruling." *Id.*

After having considered Olson's objections and having made a *de novo* determination, this Court is in agreement with the Magistrate Judge's Report and Recommendation.  Accordingly, the Court, being otherwise fully and sufficiently advised,

**IT IS ORDERED** that:

(1)  The Magistrate Judge's Report and Recommendation is **ADOPTED** as and for the opinion of the Court;

(2) Petitioner's objections to the Magistrate Judge's Report and Recommendation [DE 23] are **OVERRULED**;

(3) Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**;

(4)  A certificate of appealability **SHALL** issue only for petitioner's claims of prosecutorial misconduct;

(5)  Petitioner's motion to withhold decision on certificate of appealability and to allow briefing [DE 24] is **DENIED**;

and

(6) Judgment will be entered contemporaneously with this order.

This July 20, 2012



Signed By:

*__Karl S. Forester__*   K S F

**United States Senior Judge**